# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS

Charles Donelson (R-02279), )
        Plaintiff, )
        v. )
Karl Kirk, et al., )
        Defendants. )

Case No. 14 C 1249

Magistrate Judge Jeffrey T. Gilbert

## ORDER

Plaintiff's motion to compel directed at the Wexford Defendants [337] is denied. See attached Statement for further details.

## STATEMENT

In *pro se* Plaintiff Charles Donelson's Fourth Amended Complaint (Dkt. 110), filed by his former recruited counsel, Plaintiff challenged the care he received for asthma upon his arrival at the Illinois Department of Corrections' Northern Reception and Classification Center ("NRC") and brought numerous claims against Illinois Department of Corrections ("IDOC") employees. Focusing on his medical care claim, Plaintiff alleged that Nurse Hardy (a Wexford Health Sources employee at the time) conducted an intake examination on December 30, 2013. (*Id.*, ¶¶ 40, 48.) According to Plaintiff, Nurse Hardy's decision that his asthma did not call for an immediate appointment with a doctor or other medical provider constitutes deliberate indifference to a serious medical need. (*Id.*, ¶¶ 50-51.) Plaintiff has some issues with the Wexford Defendants' responses to Plaintiff's fourth and final set of interrogatories. Plaintiff's motion to compel directed at the Wexford Defendants (Dkt. 337) and the Wexford Defendants' response (Dkt. 340) are presently before the Court. For the following reasons, Plaintiff's motion to compel, which also requests sanctions based on the Wexford Defendants' alleged discovery violations, is denied.

First, Plaintiff appears to be asserting that the Wexford Defendants did not respond to interrogatories and production requests that he attached to his motion to compel. (Dkt. 337, pgs. 16-21.) Those discovery requests appear to have been signed on July 28, 2017 (three days before the close of discovery). (Dkt. 337, pg. 22.) During a lengthy status hearing held on July 18, 2017, the Court explained to Plaintiff that discovery needed to be *served* in time to be *completed* by the discovery close date; Plaintiff said he understood this limitation. The discovery attached to Plaintiff's motion to compel was not served timely because it was not served at least 30 days before the discovery close date. In any event, to the extent some of that discovery overlaps with Plaintiff's timely served fourth set of interrogatories to the Wexford Defendants, the Court will deal with those discovery requests in this Order. To the extent that some of Plaintiff's newly-served discovery requests are directed to the IDOC Defendants, they also are untimely.

In addition, during the status hearing on July 18, 2017 (*see* Dkt. 333), the Court gave Plaintiff ample opportunity to identify any outstanding discovery to which Defendants had not yet responded or any issues he had with any pending discovery. Plaintiff has not been shy about raising issues he has with Defendants' discovery responses during periodic status hearings. Plaintiff voiced concerns about the Wexford Defendants' then-outstanding responses to his recently served fourth set of interrogatories which are the subject of his present motion to compel. He did not mention the additional discovery requests attached to his current motion to compel, or that he intended to serve more written discovery when the Court outlined the requirement that discovery be served in time to be completed before the discovery close date.

Second, Plaintiff's objection to the fact that the Wexford Defendants renumbered their responses to his various sets of interrogatories sequentially so each set did not begin with "one" is frivolous. The Court agrees with the Wexford Defendants that their numbering convention makes it easier to address Plaintiff's objections to each wave of discovery. In addition, the numbering convention does not affect the substance of the responses.

Third, with respect to interrogatory 31, which inquires about the protocol used to screen new asthmatic inmates, Plaintiff contends that Nurse Hardy "falsified a record with a peak flow number" and says "[t]here is no indication that [his] lungs were listened to." (Dkt. 337, ¶ 6.) He thus concludes that the Wexford Defendants' response, which provides information about the intake process for asthmatic inmates, is deficient. The Court does not agree. Plaintiff's contention goes to the merits of his claims; it does not demonstrate that the Wexford Defendants failed to answer the question he asked.

Fourth, in interrogatory 32, Plaintiff asked about the "primary course of treatment" for new asthmatic inmates who arrive with "such history." (Dkt. 337, ¶ 7.) He characterizes Wexford's response (essentially, that each inmate receives individualized care) as "elusive and evasive." (*Id.*) Again, Plaintiff's dissatisfaction with the content of their response does not mean the Wexford Defendants failed to provide required information. In addition, to the extent that Plaintiff was inquiring generally about the intake process, the Court directs his attention to the Wexford Defendants' response to interrogatory 31.

Fifth, in interrogatory 33, Plaintiff asked for the name of the intake doctor at the NRC on December 30, 2013. Over objection, Wexford answered that there is no designated "intake doctor" because if a nurse performing an intake screening determines that an inmate needs immediate medical attention, the inmate then is scheduled to see a doctor or physician who is on duty at that time. The Wexford Defendants provided an adequate answer. They explained why they cannot identify the "intake doctor" as Plaintiff requested – because there is no "intake doctor" per se. Relatedly, Plaintiff contends that the Wexford Defendants' response is inconsistent with the Wexford Defendants' Rule 26(a)(1) disclosure of Nurse Hardy and Dr. Obaisi as individuals who may have knowledge or facts that support their defenses (Dkt. 242). But the Wexford Defendants assert that Nurse Hardy examined Plaintiff on December 30, 2013, and that Dr. Obaisi was Plaintiff's primary care physician and the medical director at Stateville, and this is entirely consistent with their response to Plaintiff's interrogatory no. 33. Finally, Plaintiff contends that

"the record show a doctor name I can't make out but there was a Doctor there, I ask who was the doctor." (Dkt. 337, ¶ 8.) At the Court's direction, the Wexford Defendants filed the discovery responses provided to Plaintiff under seal. (Dkt. 320.) To the extent that Plaintiff is referring to his medical records from December 30, 2013, Nurse Hardy's intake note, which is also attached to the Wexford Defendants' response as Dkt. 340-1, is the only record from that date. Thus, this portion of Plaintiff's motion is denied.

Sixth, with respect to interrogatory 34, Plaintiff asserts, "Defendant was ask is medication temporary or long term order said it does not make no difference." (Dkt. 337, ¶ 9.) This is not an objection and, if it is intended to be one, it is overruled because it does not appear to have a proper basis. The Court, however, directs Plaintiff to the Wexford Defendants' response to his motion to compel. (Dkt. 340, pg. 8.) The Wexford Defendants construed this portion of Plaintiff's motion as an inquiry about how an inmate's length of stay at the NRC affects medical prescription orders and stated that medical providers do not know how long an inmate will be at the NRC before transferring out so the length of a stay does not affect the medical care they receive. (Dkt. 340, pg.8.)

Seventh, interrogatory 25 asks if there was an inhaler shortage when Plaintiff was at the NRC, Pontiac, and Stateville. (Dkt. 337, ¶ 10.) Given that Plaintiff's Fourth Amended Complaint is based on medical care he received at the NRC, the Wexford Defendants' objection to the breadth of this interrogatory is well-taken. They also responded on the merits by stating that there was no identified shortage of inhalers at the NRC when Plaintiff was housed there. This is the only part of Plaintiff's interrogatory that calls for relevant information so this portion of Plaintiff's motion is denied.

Eighth, in interrogatory 36, Plaintiff asked why Dr. Martija, a Stateville physician, discontinued his inhaler "without even seeing [him]." (Dkt. 337, ¶ 11.) The Wexford Defendants objected, explaining that Dr. Martija treated Plaintiff well after his time at the NRC but also noted, over objection, that Plaintiff's medical records reflect that Dr. Martija in fact examined Plaintiff. Because Plaintiff appears to be focusing on treatment received well after the relevant time period, this portion of Plaintiff's motion is denied.

Ninth, in interrogatory 37, Plaintiff asked if Wexford has a policy of discontinuing inhalers for asthmatic inmates. (Dkt. 337, ¶ 12.) Over objection, Wexford answered that its policy is to provide adequate medical care to inmates according to community standards of medical care so "sometimes an inhaler is ordered; sometimes the inhaler is discontinued; and sometimes the inhaler's dosage is increased or decreased." (Dkt. 340. pg. 10.) This answer is neither "unclear" nor "evasive" (Dkt. 337, ¶ 12) so this portion of Plaintiff's motion is denied.

Tenth, in interrogatory 38, Plaintiff asked "who is responsible for implementing Wexford's protocol." As noted by the Wexford Defendants, Plaintiff did not identify the protocol or time period at issue. (Dkt. 337, ¶ 13.) The Wexford Defendants construed this interrogatory as a reference to the intake screening protocol at the NRC that is the subject of this case and answered, over objection, that there was no Wexford protocol involved in intake screening because the IDOC

developed the intake screening process. They further responded that the only conceivable Wexford policy was that its providers must render adequate medical care to patients consistent with community standards of medical care and that individual Wexford medical providers implement that "policy." This response is sufficient, especially given the vagueness of Plaintiff's interrogatory. Plaintiff's claim that it is evasive is incorrect.

Eleventh, in interrogatory 39, Plaintiff asked whether Wexford and the IDOC allow inmates to bring medications they received when housed in a county jail. (Dkt. 337, ¶ 14.) Over objection, the Wexford Defendants stated that pursuant to an IDOC policy, when an inmate arrives at the NRC with medications provided by a county jail, those medications are taken and stored pending an examination of the inmate's mental and physical health. After an examination, the medications may be returned to the inmate, the NRC provider may issue new over-the-counter medications to the inmate, an inmate can be referred for urgent examination so he can be assessed for a new prescription, or the inmate may be designated "routine" and told to submit a sick call request for further evaluation of his need for the medication. This response is not "evasive" so this portion of Plaintiff's motion is denied.

Finally, in interrogatory 40, Plaintiff asked if "the same company provides the same medications to the jails that Wexford has" and asked Wexford to state the brand, dosages, and medications. (Dkt. 337, ¶ 15.) The Wexford Defendants objected to this interrogatory as overbroad given that the operative complaint challenges care provided at the NRC, but stated that Boswell Pharmacy Services provides the medications for inmates at IDOC prisons. They also—correctly—contend that a request for all medication brands, dosages, and names prescribed to IDOC inmates is clearly overbroad. Plaintiff appears to be arguing that he needs this information to show that if an inmate arrives with a medication that is unavailable at an IDOC prison, the inmate will not receive medication pursuant to "Wexford standards." (*Id.*) Plaintiff's reasoning is unclear but regardless, this 2014 case turns on medical decisions made about Plaintiff's care and nothing in the record suggests that an esoteric asthma medication is at issue in this case. This portion of Plaintiff's motion is denied.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: September 15, 2017